IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MATTHEW OKONKWO,         )
                                 )
             Petitioner,         )
                                 )
          v.                 )        Civil Action No. 1:07cv1062-MHT
                                 )              (WO)
UNITED STATES OF AMERICA,     )
                                 )
            Respondent.     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Matthew Okonkwo ("Okonkwo") asks this court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On November 1, 2006, a jury found Okonkwo guilty of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and eleven counts of aiding in the preparation of fraudulent income tax returns, in violation of 26 U.S.C. § 7206(2).   On January 18, 2007, the district court sentenced Okonkwo to 24 months in prison for each count, all terms to run concurrently.

Okonkwo appealed to the Eleventh Circuit Court of Appeals, arguing that the trial evidence was insufficient to support his convictions.   The Eleventh Circuit rejected Okonkwo's claim, finding as follows:

> After reviewing the record, we conclude that there was sufficient evidence to allow the jury to find that there was an agreement between [alleged coconspirator John] Adewunmi and Okonkwo to conspire to defraud

the government, and that Okonkwo had the intent to do so. Okonkwo admitted to being the president of Eagle Financial Services ("EFS") and doing business as Rainbow Tax Service ("RTS"), the businesses that were listed as the tax preparers for all but one of the fraudulent returns. Okonkwo stated that he was the only person to electronically file the 1999 tax returns for his business – the year in which the fraudulent returns were filed. Testimony from several of Okonkwo's employees indicated that he was exclusively responsible for printing refund checks. None of the taxpayers received the full amount of the refund paid to them and all but one check had a forged endorsement, and several refund checks were deposited into EFS's bank account. One taxpayer indicated that after she cashed her refund check, Okonkwo convinced her to return all but $1000.00 of it, falsely telling her that she still owed taxes. All of the tax returns – including returns of taxpayers who dealt exclusively with Okonkwo – were prepared in such a way as to maximize the earned income tax credit and the resulting refund check by reporting non-existent income from CJB Ice Cream ("CJB"),[1] a company that Adewunmi, and not Okonkwo, was involved with. Last, evidence supports the conclusion that Okonkwo attempted to conceal his conduct – all the taxpayers were paid by Okonkwo and Adewunmi in cash, and, when the IRS came to search the business location, the files for the eleven fraudulent tax returns were not found.

*United States v. Okonkwo*, [No. 07-10451] 253 Fed.Appx. 1 at *2 (11th Cir. Aug. 15, 2007) (unpublished) (footnote in opinion omitted). Okonkwo did not seek certiorari review in the United States Supreme Court.

On November 28, 2007, Okonkwo filed this § 2255 motion.[2] (Doc. No. 1.) In his motion, he asserts that he received ineffective assistance of counsel for the following

---

[1]According to the evidence at trial, many of the returns listed children and foster children who were not the true children of the taxpayers.

[2]Although the § 2555 motion was date-stamped "received" in this court on December 5, 2007, Okonkwo indicates on the memorandum he filed in support of his motion (Doc. No. 2) that the motion was delivered to prison officials for mailing on November 28, 2007. Under the "mailbox rule," a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

reasons:

1.    Trial counsel failed to conduct adequate pretrial investigation, failed to consult with him about the facts of his case, and failed to properly prepare for trial. Consequently trial counsel failed to produce potential defense witnesses, conducted ineffective cross-examination of government witnesses Charlotte Green and Yvette Thomas, and presented an inadequate defense.

2.    As a result of trial counsel's inadequate investigation of the government's case, counsel failed to impeach government witnesses Larry Ellis and Louie Wilson for lying under oath and testifying falsely against him. Appellate counsel was also ineffective for failing to present this issue on appeal.

3.    Trial counsel failed to conduct an adequate investigation of the manner of operation of his tax-preparation business and thus failed to discover facts that could have been used in his defense.

4.    Trial counsel failed to conduct sufficient consultation with him prior to trial, did not convey the strength of the government's case to him, and was "nonchalant" while discussing a plea offer tendered by the government; thus, counsel failed to adequately advise him to consider the government's plea offer.

5.    Trial counsel failed to investigate and present a statute of limitations defense.

6.    Trial counsel was not present during the presentence interview with the probation officer.

7.    Trial counsel failed to investigate and present mitigating evidence at sentencing.

8.    Trial counsel failed to object to the restitution order.

9.    Appellate counsel filed a brief containing an irrelevant issue rather than issues he discussed with counsel and which would have yielded a favorable result.

10.    The cumulative effect of trial and appellate counsels' errors prejudiced his defense and deprived him of a fair trial.[3]

The government answers that Okonkwo's claims lack merit and do not entitle him to any relief.  (Doc. No. 20.)   Okonkwo was afforded an opportunity to reply to the government's answer and did so.  (Doc. No. 26.)  After due consideration of Okonkwo's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II.   DISCUSSION

### A.    Standard of Review for Claims of Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *performance* prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Id*. at

---

[3]Okonkwo sets forth the allegations in his motion in a confusing, disjointed, and repetitive manner.  This court entered an order in which it listed the issues Okonkwo appears to raise and directed him to identify any issue not listed by the court but that he in fact presents in his motion or in his supporting submissions by specific reference to the page of the motion or supporting submission where the issue is raised.  (Doc. No. 30.)  Okonkwo did not file a response to this court's order.

687-89.  The *prejudice* prong requires a petitioner to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

Under the performance component of the *Strickland* inquiry, a petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).  In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  *Id*.

Under the prejudice component of *Strickland*, a petitioner must show that "there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697 (A court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one.");  *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.").

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of

appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker....  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

**B.**   **The Claims**

> **1.**   ***Lack of Preparation and Pretrial Investigation; Failure to Consult with Defendant and Ineffective Cross-examination of Government Witnesses Green and Thomas***

Okonkwo contends that his trial counsel failed to conduct an adequate pretrial investigation, failed to consult with him about the facts of his case, and failed to properly prepare for his trial.  Consequently, Okonkwo argues, counsel failed to produce potential defense witnesses, conducted ineffective cross-examination of government witnesses Charlotte Green and Yvette Thomas, and presented a generally inadequate defense.  (*See* Doc. No. 1 at p. 5; Doc. No. 2 at pp. 5-13.)  With specific regard to his contention that counsel failed to consult with him, Okonkwo asserts that counsel never answered or returned telephone calls from him.  (Doc. No. 2 at p. 5.)  In addition, he asserts that "[c]ounsel only communicated with petitioner once, a week before trial began; in that visit counsel promised to come a day or two before trial but failed as usual."  (*Id*.)  With regard to his contention that his counsel was ill-prepared and so failed to conduct effective cross-examination of Charlotte Green and Evette Thomas, Okonkwo states:

> "Counsel did not reasonably cross-examine this witness [Ms. Green] and does know she was telling the truth or not because there was no pretrial investigation into prior business dealings between the defendant and Ms. Green which if revealed would have shown that defendant has no knowledge of what Mr. Adewunmi [Okonkwo's coconspirator] was doing. The testimony of Ms. Charlotte Green was critically strategic for the government because it was intended to prove that the defendant had "knowledge" of what Mr. Adewunmi was doing. Whereas, defendant do not what he was doing quite frankly. Hence it was a pre-emptive counter-punch of any testimony from the defendant that would slightly suggest that she did not give defendant $1,000. Evette Thomas testified that defendant was the only person who prepares taxes, transmit, and print checks. She also testified that defendant was the one who fill out deposit slip, all her testimonies are untrue because there is no way defendant could go over a thousand individual income taxes.

(Doc. No. 2 at pp. 8-9.)

In an affidavit filed with this court, Okonkwo's trial counsel, Ben Bruner, addresses

the preceding allegations by Okonkwo as follows:

4.  I began representing the petitioner after at least 4 other attorneys had withdrawn from his case for a variety of reasons.

5.  The statement that I did not consult with Mr. Okonkwo is not true. I went to see him in jail initially because he wanted to see if I could get a bond for him through an immigration court petition. I made an appointment with the case agent on the case and reviewed Mr. Okonkwo's immigration file. In that file was a final order of deportation which had been moved to be reopened by his lawyer. The judge had denied his motion to reopen those proceedings and therefore there was no basis to apply to immigration court for a bond as none is available in those circumstances. I visited Mr. Okonkwo and discussed my findings with him. He refused to accept them and told me he had a visa and just needed to pick it up. I told him that was impossible. I then met with the U.S. Attorney on the case and discussed a plea with him. The U.S. Attorney was offering basically time served. I once again visited Mr. Okonkwo. He refused to consider the offer and told me that I was to get him

a misdemeanor.  I told him that wasn't the offer.  I offered to discuss him assisting the AUSA with finding his codefendant who was still at large.  Mr. Okonkwo offered to do so if he was released.  I told him that wasn't going to be possible and he refused to consider any further plea deals and insisted on going to trial.  I told the AUSA that and again went to see Mr. Okonkwo to discuss his trial.  I asked him to prepare me a list of witnesses whom I could call on his behalf.  His own staff was testifying against him and I foresaw no way to locate the missing codefendant and Mr. Okonkwo was not helping in that regard.  Mr. Okonkwo insisted he knew nothing of the false returns he was accused of preparing and that his codefendant was to blame.  I went to see Mr. Okonkwo again prior to trial after having gone through over 1000 pages of discovery to discuss his case with him.  He said he didn't think he knew of any witness who could help him.  It was on that basis that I conducted the trial.

(Doc. No. 10 at pp. 1-3.)

Thus, counsel's averments concerning his pretrial preparation and consultations with Okonkwo are in stark contrast with what Okonkwo asserts in his § 2255 motion.[4]  Moreover, Okonkwo's only specific allegation of prejudice in this regard is that counsel's lack of investigation and preparation resulted in counsel's failure to establish the truth of Okonkwo's version of events through his cross-examination of the witnesses Green and Thomas.  However, Okonkwo fails to explain the form counsel's cross-examination should have taken in order to achieve this end.  As noted by the government in its answer to

---

[4]In an affidavit filed in response to his trial counsel's affidavit, Okonkwo actually contradicts his own earlier assertions that counsel communicated with him only once prior to trial.  In his affidavit, Okonkwo refers to counsel's visiting him on several occasions at the jail where he was being held before trial, although he complains that counsel "was always in a hurry" on these occasions and did not spend enough time discussing his case with him.  (Doc. No. 26-2 at pp. 2-3.)

Okonkwo's motion, the defense strategy at trial was to attempt to shift the blame for the fraudulent tax returns from Okonkwo to his charged coconspirator, Jonathan Adewunmi; counsel's cross-examination of Green and Thomas was consistent with this strategy.  (*See* Doc. No. 20 at p. 6.)  In cross-examining Green, who was one of the taxpayers in whose name a fraudulent tax return was prepared, counsel elicited testimony that Okonkwo introduced her to Adewunmi at his office and told her that Adewunmni would be handling her tax return, and that it was her understanding that her tax paperwork would be turned over to Adewunmi.  (Doc. No. 20-Gov. Exh. D at p. 16.)  When cross-examining Thomas, who was an employee in Okonkwo's office, counsel elicited testimony that Adewunmi, like Okonkwo and others, prepared tax returns at the office, that some clients requested that Adewunmi be their preparer, and that over a thousand customers came through the office during tax season, which suggested it would be difficult to know who – Okonkwo, Adewunmi, or someone else – among the business's preparers had prepared the fraudulent returns.  (Doc. No. 20-Gov. Exh. C at pp. 70-73.)  Okonkwo does not suggest how counsel might have cross-examined Green and Thomas differently so as to undermine any damaging testimony they gave on direct examination, and his cross-examination of the two was consistent with the defense strategy of blame-shifting to Adewunmi.  Consequently, the court concludes that Okonkwo has failed to demonstrate that he was prejudiced by his counsel's performance in this regard.

Okonkwo also takes issue with his trial counsel's failure to put on defense witnesses

and alleges that he prepared a list of 20 potential witnesses that counsel failed to pick up from him at the jail where he was held prior to trial. (*See* Doc. No. 26-2 at pp. 2-3.) Again, Okonkwo's allegations are contrary to the averments in counsel's affidavit, where counsel states that he asked Okonkwo to prepare a list of witnesses whom he could call on his behalf, but that Okonkwo told him he did not know of any witness who could help him. (Doc. No. 10 at p. 2.) Furthermore, Okonkwo, in his § 2255 motion and supporting pleadings, fails to identify any of the uncalled witnesses or to specify in any way how the witnesses could have provided testimony that benefitted his defense. Consequently, the court finds that Okonkwo again fails to demonstrate that he was prejudiced by counsel's actions.

Because Okonkwo fails to establish that counsel's performance was deficient and that he was prejudiced as a result of that deficient performance, he is not entitled to any relief based on this claim of ineffective assistance of counsel. *See Strickland*, *supra*, 466 U.S. at 687-89.

### 2. *Failure to Impeach Government Witnesses Ellis and Wilson*

Okonkwo contends that as a result of his trial counsel's inadequate investigation of the case, counsel failed to impeach government witnesses Larry Ellis and Louie Wilson[5] for lying under oath and for testifying falsely against him. (*See* Doc. No. 2 at pp. 12-13; Doc. No. 3 at p. 2.) In addition, Okonkwo argues that his appellate counsel was ineffective for failing to present this issue on appeal. (*Id.*)

---

[5]Okonkwo calls Wilson "Tim Wilson" in his pleadings. However, it appears he is actually referring to Louie Wilson.

The record reflects that in the search warrant affidavit for the search of Okonkwo's business, IRS Special Agent Larry Ellis stated that fellow IRS Special Agent Louie Wilson had spoken to a special agent with the Immigration and Naturalization Service ("INS") who had advised Wilson that in October 1990, "an individual identified as Okonkwo" had been arrested in Brussels, Belgium, for heroin possession.  (*See* Doc. No. 20-Gov. Exh. E at p. 3.)  In addition, in his grand jury testimony, Ellis stated that Okonkwo had been arrested in Belgium for trafficking in heroin.  However, the INS later determined through fingerprint comparisons that the petitioner was not the "Matthew Okonkwo" who was the subject of the drug arrest in Belgium.  Okonkwo now suggests that Ellis and Wilson, who testified for the government at his trial, could have been impeached based on their incorrect statements regarding him in the search warrant affidavit and before the grand jury.

The matter of the Belgium drug arrest of a "Matthew Okonkwo" was not disclosed in any way to the jury at Okonkwo's trial.  Thus, the only possible utility of bringing out the prior erroneous statements and testimony of Ellis and Wilson would be in an attempt to impeach their credibility based on their having made false statements under oath.  However, Okonkwo does not demonstrate that either Ellis or Wilson *knowingly* made false statements or that they had any reason to believe that their statements in the search warrant affidavit and to the grand jury about Okonkwo's drug arrest in Belgium were inaccurate.  As the government observes in its answer to Okonkwo's motion, "a reasonable lawyer could have concluded that any slight impeachment value would have been outweighed by the risk of

injecting the issue of heroin distribution into the case." (Doc. No. 20 at p. 7.) Okonkwo fails to show that his trial counsel's performance was deficient in this regard, or that he was prejudiced as a result of trial counsel's performance. *Strickland*, 466 U.S. at 687-89. Thus, he is not entitled to any relief based on this claim of ineffective assistance of his trial counsel. Likewise, he fails to show that his appellate counsel rendered ineffective assistance by failing to present this issue on appeal.

### 3.   *Counsel's Understanding of Tax-preparation Business*

Okonkwo contends that his trial counsel failed to conduct an adequate investigation of the manner of operation of his tax-preparation business and thus failed to discover facts that could have been used in his defense. (*See* Doc. No. 2 at pp. 14-15.) He is notably vague on how additional investigation by counsel of his line of business could have assisted his defense, although he makes some reference to evidence concerning the workings of tax-return software that might have been introduced. However, he does not point to any specific evidence and makes no actual attempt to show how this evidence might have negated the evidence of his guilt. Again, Okonkwo's cursory allegations of ineffective assistance fail to establish deficient performance by his counsel or any resulting prejudice. *Strickland*, 466 U.S. at 687-89. Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 4.   *"Nonchalant" and Inadequate Advice about Plea Offer*

Okonkwo contends that his trial counsel failed to conduct sufficient consultation with

him prior to trial, did not convey the strength of the government's case to him, and was "nonchalant" while discussing a plea offer tendered by the government.  (*See* Doc. No. 2 at pp. 16-17; *see also* Doc. No. 2 at pp. 5-7.)  As a consequence, he says, counsel failed to adequately advise him to consider the government's plea offer.  (*Id*.)

In his affidavit filed with this court, Okonkwo's trial counsel states that after discussing a plea deal with the government, he informed Okonkwo that the government was offering him "basically time served," but that Okonkwo refused to consider the government's offer and told counsel that he was to "get him a misdemeanor." (Doc. No. 10 at p. 2.)  Counsel then advised Okonkwo that the government was not offering him a misdemeanor and offered to discuss Okonkwo's assisting the government in locating his codefendant Adewunmi, who was still at large.  (*Id*.)  According to counsel, Okonkwo offered to do so only if he was released.  (*Id*.)  Counsel states that when he then told Okonkwo it was not possible to obtain his release at that time, Okonkwo "refused to consider any further plea deals and insisted on going to trial."  (*Id.*)

In its answer to Okonkwo's motion, the government has included as an exhibit a copy of an e-mail letter from the Assistant United States Attorney to Okonkwo's trial counsel, to which the U.S. Attorney attached a copy of the plea agreement offered to Okonkwo.  (Doc. No. 20-Gov. Exh. F.)  Under the offered plea deal, Okonkwo would plead guilty to a single count of assisting in the filing of a false tax return; the government agreed that the appropriate sentence for Okonkwo would be at the low end of the guideline range, except

14

that if the low end were determined to be 12 months, the government agreed that the appropriate sentence would be 12 months and 1 day. (*Id.*, *Plea Agreement* at p. 2.) In his letter to Okonkwo's counsel, the U.S. Attorney indicates that Okonkwo might receive an even shorter sentence under the agreement if the government moved at sentencing for a downward departure pursuant to U.S.S.G. § 5K1.1, contingent upon Okonkwo's substantial assistance to the government. (*Id., E-mail Letter* at p. 1.) The e-mail letter from the U.S. Attorney to Okonkwo's trial counsel is dated September 22, 2006, and advises counsel that the plea offer would expire unless Okonkwo accepted it on or before October 3, 2006. (*Id.*)

Also attached to the government's answer to Okonkwo's § 2255 motion is a copy of a response sent by Okonkwo's trial counsel to the U.S. Attorney, dated October 5, 2006, in which Okonkwo's counsel states that "[a]fter numerous conversations with Mr. Okonkwo, he has elected to go to trial in this cause." (Doc. No. 20-Gov. Exh. G.)

Weighing Okonkwo's vague allegations – that his trial counsel failed to adequately convey to him the strength of the government's case and was "nonchalant" in discussing the plea offer tendered by the government – against the averments by counsel in his affidavit and the record evidence indicating that counsel did fully discuss the plea offer and its terms with Okonkwo but that Okonkwo was obstinate in his refusal to accept the deal, this court concludes that Okonkwo has failed to show that his trial counsel's performance was deficient in this regard, or that he was prejudiced as a result of counsel's performance. *Strickland*, 466 U.S. at 687-89. In his reply to the government's answer to his § 2255 motion, Okonkwo

appears to suggest that his trial counsel's reference in his affidavit to the government's offer of a plea deal of "basically time served" (Doc. No. 10 at p. 2) indicates that the government made a plea offer with terms different from, and more favorable than the one communicated to him by counsel.  (*See* Doc. No. 26 at p. 7)  However, when counsel's statement is viewed in light of the terms of the plea offer contained in the record (the only plea offer for which any evidence exists), it is clear that this the same plea offer to which counsel refers in his affidavit and which counsel communicated to Okonkwo prior to trial.  Therefore, for the reasons stated, Okonkwo is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 5.    *Statute of Limitations Defense*

Okonkwo contends that his trial counsel rendered ineffective assistance by failing to investigate and present a statute of limitations defense.  (*See* Doc. No. 2 at pp. 18-19.)

Title 26 U.S.C. § 6531 provides, in pertinent part, as follows:

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that *the period of limitation shall be 6 years –*
>
> *(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;*
>
> ....
>
> *(3) for the offense of willfully aiding or assisting in, or procuring, counseling, or advising, the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a false*

*or fraudulent return*, affidavit, claim, or document (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document);

    ....

*...   For the purpose of determining the periods of limitation on criminal prosecutions, the rules of section 6513 shall be applicable.*

26 U.S.C. § 6531 (emphasis added).

Title 26, § 6513 states, in pertinent part:

(a) Early return or advance payment of tax. – *For purposes of section 6511, any return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day.*  For purposes of section 6511(b)(2) and (c) and section 6512, payment of any portion of the tax made before the last day prescribed for the payment of the tax shall be considered made on such last day.  For purposes of this subsection, the last day prescribed for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer and without regard to any election to pay the tax in installments.

26 U.S.C. § 6513(a) (emphasis added).

Thus, § 6513(a) provides that, for limitations purposes, returns that are filed early are deemed to have been filed on April 15 of the same year. *See United States v. Habig*, 390 U.S. 222, 225-26 (1968) ("[I]f a taxpayer anticipates the April 15 filing date by filing his return on January 15, the six-year limitations period for prosecutions under § 6531 commences to run on April 15.  Practically, the effect of the reference to § 6513 in § 6531 is to give the Government the administrative assistance, for purposes of its criminal tax investigations, of a uniform expiration date for most taxpayers, despite variations in the dates of actual filing.").

17

Okonkwo's indictment was returned on April 5, 2006. Counts 2 through 12 of the indictment all charge Okonkwo with assisting in the preparation of false 1999 tax returns, in violation of 26 U.S.C. § 7206(2). These returns were filed between January 24, 2000, and April 15, 2000. As indicated above, pursuant to 26 U.S.C. § 6513(a), the "deemed" filing date of these returns was therefore April 15, 2000. Thus, with respect to Counts 2 through 12, the April 5, 2006, indictment was returned less than six years after the deemed filing date of the fraudulent tax returns. Consequently, any limitations defense as to Counts 2 through 12 would have been futile.

Count 1 of Okonkwo's indictment charges a conspiracy to defraud the United States "for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment, and collection of revenue, that is, income taxes." Count 1 includes allegations of overt acts in furtherance of the conspiracy occurring on April 5, April 7, April 15, and May 8 of 2000 – all dates within the six-year statutory limitation period.[6] In order to meet the requirements of the statute of limitations, the government "must allege and prove the commission of at least one overt act by one of the conspirators within [the limitations period] in furtherance of the conspiratorial agreement." *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976). In Okonkwo's case, the government alleged and proved the commission of several overt acts in furtherance of the conspiracy by one of the conspirators within the six-

---

[6]Count 1 also alleges overt acts occurring on earlier dates.

year limitations period.  Therefore, as was the case with Counts 2 through 12 of the indictment, any limitations defense as to Count 1 would have been futile.

Because there would have been no merit to a statute of limitations defense in Okonkwo's case, his counsel was not ineffective for failing to pursue such a defense.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless issue); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).  Therefore, Okonkwo is not entitled to any relief based on this claim.

### 6.   *Counsel's Absence from Presentence Interview*

Okonkwo alleges that his trial counsel was ineffective because he was not present during Okonkwo's presentence interview with the probation officer.  (*See* Doc. No. 3 at p. 1.)  The court first notes that Okonkwo fails to cite any binding authority holding that a defendant's Sixth Amendment right to counsel applies to presentence interviews by the court's probation office.  *See United States v. Simpson*, 904 F.2d 607, 611 (11th Cir.1990) (declining to address the argument because the issue was waived but noting that three circuits have rejected it); *see also Williams v. United States*, [No. CV508-034] 2009 WL 2486914 (S.D. Ga. Aug. 10, 2009) (noting that vast majority of other circuits have found no violation of right to counsel where probation office conducts presentence interview outside presence of counsel, especially if probation office has taken no action to exclude counsel).  In any event, Okonkwo fails to point to any prejudice that resulted from his counsel's absence from the interview.  For instance, Okonkwo does not suggest, much less establish,

19

that his sentence was affected by any statements he gave the probation officer.  Nor does he

point to any errors in the presentence investigation report prepared by the probation officer.

In the absence of a demonstration of any resulting prejudice, Okonkwo cannot succeed on

a claim of ineffective assistance of counsel based on his counsel's absence from the

interview with the probation officer.  Okonkwo is not entitled to § 2255 relief here.

### 7.    *Mitigating Sentencing Evidence*

Okonkwo says his counsel rendered ineffective assistance at sentencing by failing to

investigate and present mitigating evidence to the district court.  (*See* Doc. No. 2 at pp. 20-

23.)  In particular, Okonkwo maintains that counsel should have presented members of his

family and the minister of his church to plead for leniency.  (*Id*. at p. 20.)  Okonkwo also

suggests that counsel could have presented, as mitigating factors, evidence that he had no

prior criminal record, had children who would be left without a father while he was in

prison, had founded his own business and provided employment to many others,  was

accomplished in terms of education, and was the founder of a church that engaged in

humanitarian outreach.  (*Id*. at p. 21.)

> In his affidavit filed with this court, Okonkwo's trial counsel states, in pertinent part:

> Regarding his allegations that I should have put on evidence that he was a
> minister in mitigation of his sentence, Mr. Okonkwo had described himself as
> a deacon to me and not a minister.  The Court at sentencing was much
> disturbed that the petitioner had taken advantage of poor people in this
> scheme.  To argue that Mr. Okonkwo was involved in a leadership position
> with a church would have in my view made it worse in that the Court would
> have accused him of using his church to prey on poor people.  My recollection
> is that I tried to argue that the case should be sentenced as a time served case

and not pursuant to the guidelines because Mr. Okonkwo had a final order of deportation waiting for him and serving additional time would be a waste of U.S. resources to little avail.

(Doc. No. 10 at p. 3.)

Okonkwo does not demonstrate that his family members and church minister were indeed willing to plead for leniency on his behalf at his sentencing. Nor does he allege that he ever suggested to his counsel that such testimony might be forthcoming. Moreover, as argued by the government in its answer to the § 2255 motion (*see* Doc. No. 20 at p. 11), and as suggested by trial counsel in his affidavit, evidence regarding Okonkwo's leadership position in his church, his educational accomplishments, and his standing as a businessman could have cut either way at sentencing, as these were things that put Okonkwo in positions of trust and authority and allowed him to take advantage of others. Indeed, at sentencing, the district court asked Okonkwo's counsel why a high sentence was not justified when Okonkwo took advantage of poor and uneducated people in committing his fraud. (*See Sentencing Hearing* at pp. 4-7.) Under the circumstances, the district court did not demonstrate any inclination to impose a lower-than-prescribed sentence, and indeed, although counsel argued for an 18-month sentence, at the low end of the advisory guidelines, the court imposed a 24-month sentence, at the top end of the applicable advisory guidelines.

Based on the foregoing, the undesigned concludes that Okonkwo has failed to show that the results of his sentencing would have been any different had his counsel presented the alleged mitigating evidence. In the absence of a demonstration of any prejudice,

Okonkwo cannot succeed on this claim of ineffective assistance of counsel.  Therefore, he is not entitled to any relief based on this claim.

### 8.    *Restitution Order*

Okonkwo contends that his trial counsel should have objected to the district court's restitution order making him responsible for repaying the IRS the full amount of fraudulently obtained tax refunds, because it was wrong for the court to make him "bear the consequences of a codefendant."  (*See* Doc. No. 26-2 at p. 4.).

There is no merit to this claim.  "If the court finds that more than one defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h); *see also, e..g., United States v. Rini*, 229 Fed.Appx. 841, 846 (11th Cir. 2007) (unpublished).  It was appropriate for the district court to hold Okonkwo liable for the full amount of restitution.  Counsel is not ineffective for failing to argue a meritless issue. *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.  Okonkwo is not entitled to any relief based on this claim.

### 9.    *Appellate Counsel's Failure to Raise Issues*

Okonkwo contends that his appellate counsel rendered ineffective assistance by filing a brief containing a single "irrelevant issue" rather than presenting issues that Okonkwo had discussed with counsel and which, according to Okonkwo, would have yielded a favorable

result on appeal.[7]  (*See* Doc. No. 26 at p. 7; Doc. No. 26-3 at pp. 2-3.)

The only arguably specific allegations Okonkwo makes in this regard is that his appellate counsel should have presented on appeal Okonkwo's complaints regarding the alleged ineffective assistance of his trial counsel and that appellate counsel should also have pursued a statute of limitations defense on appeal.  However, Okonkwo's claims of ineffective assistance of trial counsel were not matters that appellate counsel could have raised for the first time on appeal.  Moreover, those claims of ineffective assistance of trial counsel have been presented by Okonkwo in his § 2255 motion and have been found to be without merit.  Finally, as discussed previously, there was no merit in a statute of limitations defense; consequently, appellate counsel could not be ineffective for failing to pursue this issue.  Okonkwo has failed to demonstrate that his appellate counsel rendered ineffective assistance.

### 10.    *Cumulative Error*

Okonkwo asserts that the cumulative effect of his trial and appellate counsels' errors prejudiced his defense and deprived him of a fair trial.  (*See* Doc. No. 2 at p. 23; Doc. No. 26 at p. 2.)  In the absence of any error, however, there can be no cumulative error.  *See United States v. Hall*, 455 F.3d 508, 520 (5th Cir.2006).  Because this court has found no error in trial or appellate counsel's performance, Okonkwo's cumulative error claim also fails.

---

[7]Okonkwo was represented on direct appeal by attorney Russell T. Duraski.

Moreover, to the extent Okonkwo's claim implicates *United States v. Cronic*, 466 U.S. 648 (1984), he likewise is entitled to no relief.  In *Cronic*, the Supreme Court found that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case in unjustified."   466 U.S. at 658.   In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*.  *Cronic*, 466 U.S. at 659.  An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir. 2002).

The record demonstrates that Okonkwo was represented by counsel at every critical stage of his trial and that meaningful adversarial testing of the government's case took place at trial and on appeal.  Thus, for the reasons as stated, Okonkwo is not entitled to any relief on his cumulative effect claim premised upon a claim of ineffective assistance of counsel.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Okonkwo be denied.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **March 19, 2010.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections

will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 5th day of March, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE